# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Molly Vogt,<br><br>        Plaintiff,<br><br>v.<br><br>MEnD Correctional Care, PLLC, and Crow Wing County, Minnesota, and Heath Fosteson, Individually and in his capacity as Crow Wing County Jail Administrator, CO Robert Anderson, CO Raynor Blum, CO Cherokee DeLeon, CO Christine Ghinter, CO Ronald J. Imgrund, CO Lukasz Organista,<br><br>        Defendants. | Case No.: 21-CV-01055 (WMW/KMM)<br><br>**Defendants Crow Wing County, Heath Fosteson, Robert Anderson, Raynor Blum, Cherokee DeLeon, Christine Ghinter, Ronald J. Imgrund, and Lukasz Organista's Reply Memorandum of Law in Support of its Motion to Dismiss** |

Defendants submit this Reply Memorandum in support of their Motion for Dismissal. Plaintiff fails to state claims upon which relief may be granted. Joshua Vogt's coherence and cooperation during booking and regular observations of him does not support the conclusion his intoxication was a serious medical need. The officers did not know to what extent Vogt was on drugs, what drugs he was using, how much methamphetamine Vogt used, or whether he smuggled any into the jail. Thus, Plaintiff fails to establish Fourteenth Amendment deliberate indifference claims against Crow Wing County Correctional Officers or any *Monell* claim against Crow Wing County. Further, there is no basis for a failure to train claim against the County or Defendant Fosteson. Accordingly, Plaintiff's claims must be dismissed.

**Argument**

I. **County Defendants' Attached Exhibits can Properly be Considered.**

Plaintiff tries to distract the court from the merits of Defendants' legal defenses by arguing about the three exhibits attached to the County Defendants' Answer pleading. The attached exhibits are embraced by the pleadings and references are made to them in the Complaint. Plaintiff argues that Defendants "cherry picked" documents, but Defendants were simply being conservative with the number of documents submitted to the Court with its pleading. A court "may consider the pleadings themselves, material embraced by the pleadings, exhibits attached to the pleadings, and matters of public record" such as judicial records. *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010) (citing *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)). This includes "documents and judicial records implicitly referenced in Plaintiff's Complaint." *Semler v. Johnston*, No. 20-CV-1062 (WMW/LIB), 2020 WL 9171089, at fn. 1 (D. Minn. Nov. 9, 2020), *report and recommendation adopted*, No. 20-CV-1062 (WMW/LIB), 2021 WL 942095 (D. Minn. Mar. 12, 2021). Each of the three exhibits submitted with Defendants' responsive pleading was embraced in Plaintiff's Complaint.

Exhibit A is a copy of the Incident Report completed by Sgt. Ronald J. Imgrund, which is embraced by Plaintiff's Complaint through her allegations and clear implicit references to Imgrund's Incident Report. Using wording effectively lifted from the report, paragraphs 26 and 27 of the Complaint specifically refer to Sgt. Ronald Imgrund and discuss Imgrund's actions and perceptions of the situation when Mr. Vogt's condition worsened at the jail. "It is true that the plaintiff must supply any documents upon which its

complaint relies, and if the plaintiff does not provide such documents the defendant is free to do so." *BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 688 (8th Cir. 2003). Upon a brief review of the Exhibit A report, the Court can see how the allegations were picked straight from this report and embraced in the Complaint. It is unclear how Plaintiff is disputing the authenticity of the report, as she embraced the facts of the report to formulate her Complaint. Only now that the report is embraced and rest of the facts from that report are provided to the Court, Plaintiff realized the facts undercut her position. Plaintiff can disagree with Defendants' legal argument without having a basis for questioning the authenticity of the report.

This report was provided to Plaintiff before the present litigation as part of a Crow Wing County data practices response. Exhibit C is a letter submitted to show the data has been produced to Plaintiff, that Plaintiff had control of the document prior to litigation, and had access in order to formulate her Complaint based on the Imgrund Report's contents. Plaintiff argues out both sides of her mouth, suggesting Defendants cannot submit exhibits to the Court, while also claiming Defendants are "cherry picking" documents. This letter shows a fuller picture of what documents Plaintiff was provided and had access to in preparation of her Complaint. Plaintiff does not question the authenticity of this letter or that she received the documents listed. Plaintiff admits in her opposition papers that the documents in this list were relied upon to craft the Complaint. Certainly, several documents in the list would need to be embraced by the Complaint in order to determine the factual allegations, as Plaintiff was not present at the jail and had no firsthand knowledge of the events that took place, needing to refer to and implicitly reference these documents to craft

3

her allegations.

Defendants had the right to submit these embraced documents with its Motion, and the Court has the ability and authority to consider them in its analysis without turning the motion into one of summary judgment. Even without incorporation of the documents attached to Defendants' Motion, the arguments and defenses still stand, and dismissal is appropriate.

**II.     Individual Defendants are entitled to Qualified Immunity as a bar to claims against them and cannot be liable for the constitutional violations in Counts I and II.**

Jail Administrator Fosteson and Corrections Officers Anderson, Blum, DeLeon, Ghinter, Imgrund, and Organista are entitled to qualified immunity because Plaintiff fails to establish a violation of a clearly established constitutional right. Vogt's intoxication alone does not establish an objectively serious medical need, and arguments about what staff should have done do not support a deliberate indifference claim. Simply put, "[q]ualified immunity is an entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (citing *Mitchell v. Forsyth*, 472 U.S. 511 (1985)).

**A.     No Objectively Serious Medical Need**

Vogt's intoxication did not establish an objectively serious medical need when he was booked into jail. There must be something out of the norm to alert an officer to a serious medical need related to intoxication, and not all intoxicated individuals require a medical examination upon intake at a jail. *Thompson v. King*, 730 F.3d 742, 748 (8th Cir. 2013).

Compliance and coherence of a detainee and lack of knowledge about amounts of methamphetamine used, or when it was used, support a finding of no serious medical need. *See Grayson v. Ross*, 454 F.3d 802, 810 (8th Cir. 2006). In contrast, courts have found an objectively serious medical need where officers knew the type and likely quantity of drugs consumed, physical findings from a drug evaluation, and a detainee passed out in the booking area. *McRaven v. Sanders*, 577 F.3d 974, 981-82 (8th Cir. 2009); *see also Barton v. Taber*, 820 F.3d 958, 965 (8th Cir. 2016); *Thompson v. King*, 730 F.3d 742, 748 (8th Cir. 2013).

At page 12 of her Opposition papers, Plaintiff argues Defendants are completely ignoring her allegations. Factual allegations are taken into account, but legal conclusions about a "serious medical condition" are not appropriate for Plaintiff to allege. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

As more fully discussed in pages 8 to 11 of Defendants' Memorandum of Law in Support of its Motion to Dismiss, there is a high standard to overcome Defendants' right to qualified immunity. As discussed in Defendants' papers, the Eighth Circuit in *Grayson* discusses how officers are afforded this immunity even in situations when an officer is aware an arrestee was likely under the influence of methamphetamine. 454F.3d 802, 810 (8th Cir. 2006).

Here, Vogt's intoxication level was not so obvious a layperson would easily recognize the need for a doctor's attention. Plaintiff does not sufficiently show how Vogt had an objectively serious medical need upon entering the jail. The Eighth Circuit has

5

recognized there must be something out of the norm to alert an officer to a serious medical need related to intoxication, and not all intoxicated individuals require a medical examination upon intake at a jail. *Thompson*, 730 F.3d at 748 ("An officer does not lose the protections of qualified immunity merely because he does not react to all symptoms that accompany intoxication."). Vogt's intake was very similar to that in *Grayson*. Indeed, just as in *Grayson*, the jailers did not know the quantity of methamphetamine Vogt had consumed.

Further, Plaintiff tries to distract the Court from the core issues by diverting its attention to non-issues. On page 13 of the Opposition Memorandum, Plaintiff argues that the law cited by Defendants somehow lacks relevance, when the cases cited clearly relate to the legal standards cited and at play here.

At pages 14 to 15 of the Opposition papers, Plaintiff argues that the facts of *Barton v. Taber* are analogous to the present case, in attempt to undercut Defendants' qualified immunity defense. 820 F.3d 958 (8th Cir. 2016). However, the facts in *Barton* are notably different, in that:

- Barton was involved in a drunk driving vehicle accident and officers responded to the scene of the accident;

- Barton completed a breath test and had a blood alcohol content of 0.11;

- Barton could not stand on his own from the moment officers arrived at the scene;

- Barton was nonresponsive to questions or commands at the scene of the accident to the extent an officer had to check for a pulse;

- Barton was unable to answer questions during the booking process.

*Id*. at 962. The Court in *Barton* states "we can assume that most individuals arrested on

intoxication-related charges are not in obvious need of prompt medical care." *Id*. at 965. The Court looked at the totality of the alleged symptoms and noted that Barton being so "unresponsive such that an officer was obliged to check for a pulse" at the scene of the arrest played a role in finding for the non-moving party. In *Barton*, the medical issues stemmed from an obvious and objective vehicle accident while Barton was intoxicated. Further, from the moment the officers arrived at the scene, Barton was incoherent, unable to answer questions, and unable to stand on his own or walk. *Id*. at 962. In the present case, Vogt was able to talk and walk on his own when he was arrested and when he arrived at the jail. He was not exhibiting extreme symptoms and become incoherent until he had been at the jail for over an hour, and officers did not have a clear understanding why his symptoms were worsening. Plaintiff's allegations are not analogous to the facts in *Barton* such that it would support a finding of an objectively serious medical need.

At page 16 of the Opposition, Plaintiff further offers *Plemmons v. Roberts* as an example of defendants being denied qualified immunity based on objective medical need. 439 F.3d 818 (8th Cir. 2006). However, *Plemmons* is also notably distinguishable because Plemmons was experiencing heart issues a couple days after being arrested an in custody. Plemmons had informed the jail he had previously had two heart attacks, and the issues arose when Plemmons experienced symptoms specifically related to heart problems in his cell, his cellmate called for help, and officers failed to get medical assistance when it became clear the symptoms were serious. *Id*. at 820–21, 824. This differs from the present case because Plemmons's concerns arose two days after he was arrested, the jail was aware of his specific heart condition, and he had arm and chest pain. Plaintiff conflates the

objectively serious medical need and deliberate indifference. Contrary to how Plaintiff frames her argument on pages 16 to 17, the *Plemmons* court does not discuss panic attacks when determining a basis for an objectively serious medical need. *Id*. at 823–24. Panic attacks and the officers' response to Plemmons is only discussed as it related to deliberate indifference. *Id*. at 824. Plaintiff's reference and argument here is both distinguishable and unfounded.

Hindsight does not establish deliberate indifference, rather Plaintiff must prove an officer deliberately disregarded a risk by showing the officer knew her own conduct was inappropriate in light of the risk. *Letterman v. Does*, 789 F.3d 856, 862 (8th Cir. 2015). Nor was there an obvious medical need, as the jailers closely observed Vogt in the booking cell. Throughout the entire process, the officers did not know Vogt had used methamphetamine, and further had no understanding to the extent he had consumed such a large amount. Accordingly, Vogt did not have an objectively serious medical need when he was booked into Crow Wing County Jail, and Plaintiff's claims must be dismissed.

### B. No Actual Knowledge or Deliberate Disregard

Next, Plaintiff's argument that officers should have summoned medical personnel sooner does not establish a constitutional claim. The "subjective inquiry must show a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." *Gordon ex rel. Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006). The subjective prong requires Plaintiff "demonstrate the official actually knew of the risk and deliberately disregarded it." *Vaughn v. Greene County*, 438 F.3d 845, 850 (8th Cir. 2006). As a result, the subjective prong contains two components: subjective knowledge and deliberate

disregard.

If an official is unaware of the facts revealing a risk, the official cannot possess subjective knowledge of the risk. *Spruce v. Sargent*, 149 F.3d 783, 786 (8th Cir. 1998) (quoting *Farmer*, 511 U.S. at 838). In *Grayson*, the Eighth Circuit determined the corporal did not subjectively know the detainee required medical attention, and therefore, was not deliberately indifferent to a medical need, when despite knowing of likely methamphetamine use, he did not know the quantity taken or the time it was taken, and his behavior at the time of intake did not suggest a high degree of intoxication. 454 F.3d at 810. Similarly, Defendant Officers did not know the quantity of methamphetamine Vogt used or when it was used, and their observations of his behavior did not suggest a high degree of intoxication requiring emergency medical assistance. Further, even if Vogt did smuggle drugs into the jail, there were no allegations that the officers were somehow aware of this or that he would have consumed the methamphetamine in the pre-booking area bathroom.

Even if the Court concludes the officers had actual knowledge of an objectively serious medical need, the officers did not deliberately disregard a risk. Vogt was placed in a cell in which the jail staff could easily observe him. The officers performed regular checks on Vogt. When it was observed that Vogt's condition became more serious, Officer Imgrund called for medical assistance and for emergency medical services for Vogt.

Vogt was searched at least twice before being booked. Even if Vogt did bring contraband into the jail, the jail staff had no knowledge of this act. Hindsight cannot support this deliberate indifference claim. The jail staff were not aware of facts supporting

9

smuggling methamphetamine into the jail, his ingestion of methamphetamine, or any high level of intoxication at the time of booking to bar being booked into the jail in the first place. Accordingly, Plaintiff fails to establish a deliberate indifference claim and the officers are entitled to qualified immunity for their reasonable actions.

Demonstrating some injury occurred is not enough to establish a deliberate indifference claim. Courts analyze the "measures taken in light of the practical limitations on jailers . . . [and] [s]imply laying blame or fault and pointing out what might have been done is insufficient. The question is not whether the jailers did all they could have, but whether they did all the Constitution requires." *Luckert v. Dodge County*, 684 F.3d 808, 818 (8th Cir. 2012). *Luckert* states that, in determining whether officials acted with deliberate indifference, courts "should be cognizant of how serious the official knows the risk to be . . . [and] because jail officials . . . do not have the benefit of twenty-twenty hindsight, as we do now, our primary focus is on those precautionary measures which were undertaken." *Id*. at fn. 5 (citing *Gregoire v. Class,* 236 F.3d 413, 418 (8th Cir. 2000); *Liebe v. Norton,* 157 F.3d 574, 578 (8th Cir. 1998)).

Plaintiff cannot establish a constitutional violation. Without actual knowledge, Plaintiff cannot establish Defendants were deliberately indifferent to that risk as required to establish a constitutional violation. *Gregoire,* 236 F.3d at 417. Vogt's death is tragic, but Defendants are not liable under Section 1983 for the violation of any clearly established constitutional right. Accordingly, they are entitled to qualified immunity.

10

### III. Plaintiff's *Monell* Claims (Counts III and IV) and Failure to Train Claim (Count V) must be dismissed.

Plaintiff argues the County has an ongoing and systematic failure to provide adequate medical treatment to inmates suffering from drug overdoses. A county is subject to liability under 42 U.S.C. § 1983 only when the violation of an inmate's federally protected right can be attributed to the enforcement of a county policy. *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 694 (1978) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). Counties cannot be held liable under Section 1983, "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Kuha v. City of Minnetonka,* 365 F.3d 590, 603 (8th Cir. 2003) (quoting *Monell*, 436 U.S. at 691) (overruled on other grounds); *Sitzes v. City of W. Memphis Ark.,* 606 F.3d 461, 470 (8th Cir. 2010) (without any underlying constitutional violation, a plaintiff cannot maintain a claim against a local government). Here, as set forth above, there is no underlying constitutional deprivation. *See supra* Section II. Absent an underlying constitutional violation, there is no basis for *Monell* liability. *Owen v. City of Independence, Mo.*, 445 U.S. 622, 664 (1980); *Malone v. Hinman*, 847 F.3d 949, 955 (8th Cir. 2017) (when official did not violate plaintiff's constitutional rights, there can be no Section 1983 or *Monell* liability). Accordingly, Plaintiff's *Monell* claim must be dismissed.

Even if the Court determines a constitutional violation has occurred, it must evaluate whether there is an unconstitutional policy or custom that caused the harm. The

11

Supreme Court "require[s] a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Brown*, 520 U.S. at 403, 117 S. Ct. at 1388. At the pleading stage, "[e]ven if a plaintiff cannot identify the full scope of an alleged custom or policy, the key to surviving dismissal is that the 'complaint must allege facts which would support the existence of an unconstitutional policy or custom.'" *Sagehorn v. Indep. Sch. Dist. No. 728*, 122 F. Supp. 3d 842, 867 (D. Minn. 2015). Plaintiff's conclusory allegation simply will not suffice. *See, e.g. Triemert v. Washington Cty.*, Civ. No. 13–1312, 2013 WL 6729260, at *12 (D. Minn. Dec. 19, 2013) (Schiltz, J., adopting Report & Recommendation of Graham, M.J.) (plaintiff's "vague and conclusory allegations that his injuries were caused by some unidentified unconstitutional policies, customs or practices is not sufficient to state a [*Monell*] claim"), *aff'd*, 571 Fed. App'x. 509 (8th Cir. 2014) (*per curiam*); *D.B. v. Hargett*, Civ. No. 13–2781, 2014 WL 1371200, at *8 (D. Minn. Apr. 8, 2014) (Davis, C.J., adopting Report & Recommendation of Brisbois, M.J.).

Plaintiff alleges a systemic failure to provide adequate medical care to inmates dealing with drug overdose such that the County had *de facto* policy was in place. However, Plaintiff does not allege any facts to show anything more than mere speculation to support a *de facto* policy or procedure to support this legal conclusion. Plaintiff cannot maintain a claim against the County without alleging a policy or custom that was the "moving force" in leading to a deprivation of Vogt's constitutional rights.

Plaintiff submits data obtained pursuant to a MGDPA request to support his assertion that a policy exists that Crow Wing County fails to provide medical care for

12

arrestees who are dealing with drug overdoses, but she fails to acknowledge that the situations cited are not cases where the arrestees died at the jail. The statements made in the Defendants' moving papers were not false, as the deaths cited by Plaintiff occurred at a hospital after being taken by emergency medical services. There may have been deaths of arrestees after having come to the jail and been taken away by emergency medical services in responding to medical emergencies. At Page 2 of Exhibit C attached to the Declaration of Nicholas S. Sweeney, the Special Incident Report clearly states that the death occurred at the hospital, and it also states the inmate was not under the influence of drugs or alcohol. This first example of an inmate in Exhibit C involves an inmate who had not used drugs at the jail but had decided to harm himself in another manner. This clearly does not establish a *de facto* policy of jailer failing to assist arrestees dealing with drug overdose. Further, at page 4 of the same Exhibit C attached to Nicholas S. Sweeney's Declaration is an investigation report by the Minnesota Department of Corrections, which states the agency investigated the matter and found "[m]edical attention was given in a timely manner, reports were [sic] appeared accurate, and well being checks were completed in accordance with the [governing] rule."

     Beginning at page 41 of Exhibit C attached to the Declaration of Nicholas S. Sweeney are documents relating to another inmate who died at a hospital, not at the jail. There is no reference to how the County failed to provide proper care for this inmate or how the County could have provided better care for the inmate. None of these documents support a finding that Crow Wing County has a pattern of showing deliberate indifference to arrestees or inmates suffering from drug overdose.

Second, in order to establish liability for a *Monell* of failure to train claim, a plaintiff must also prove that the municipality showed deliberate indifference to or tacitly authorized police officers' misconduct after having notice of that misconduct. *Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013). "Notice is the touchstone of deliberate indifference in the context of § 1983 municipal liability[,]" *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1216 (8th Cir. 2013), but the complaint must also allege that the defendant "made a deliberate choice" to ignore alleged violations. *Johnson*, 725 F.3d at 829. Nothing in the Complaint would enable Plaintiff to meet "the rigorous, deliberate indifference standard of fault." *Atkinson*, 709 F.3d at 1216 (quoting *Szabla v. City of Brooklyn Park, Minnesota*, 486 F.3d 385 (8th Cir. 2007)). "A municipality may not be held liable under § 1983 merely because it failed to implement a policy that would have prevented an unconstitutional act by an employee otherwise left to his own discretion." *Id.* (quotation omitted).

Other than the single incident at issue in this Complaint, Plaintiff has not pleaded with any specificity any allegations of similar medical care or right to life constitutional violations related to any other detainees at CWCJ to provide notice to the County of violations or any basis for the County to be aware of or to address the alleged *de facto* policy. The County had no reason to believe that its training of CWCJ staff was inadequate. Absent some form of notice, the County cannot be deliberately indifferent to the risk that its provision of medical care to people dealing with drug overdosing would result in "a violation of a particular constitutional or statutory right." *Bd. of Cnty. Com'rs of Bryan Cnty., Okla. v. Brown,* 520 U.S. 397, 411 (1997). There is no plausible basis for these

14

claims against the County and Defendant Fosteson, and they must be dismissed.

## Conclusion

For the foregoing reasons, these Defendants respectfully request this Court dismiss Plaintiff's claims in their entirety, together with costs and disbursements.

Dated: July 1, 2021

**Kennedy & Graven, Chartered**

By: */s/* Jordan C. Leitzke
Jessica E. Schwie (A.R. #0296880)
Jordan C. Leitzke (A.R. #0400158)
700 Fifth Street Towers
150 South Fifth Street
Minneapolis, MN  55402
Telephone: (612) 337-9222
Facsimile:  (612) 337-9310
Email: jschwie@kennedy-graven.com
           jleitzke@kennedy-graven.com

**Attorneys for Defendants Crow Wing County, Heath Fosteson, Robert Anderson, Raynor Blum, Cherokee DeLeon, Christine Ghinter, Ronald J. Imgrund, and Lukasz Organista**