UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Molly Vogt,

                Plaintiff,

v.

Crow Wing County et al.,

                Defendants.

Case No. 0:21-cv-1055 (WMW/KMM)

**REPORT AND RECOMMENDATION**

---

This matter is before the Court on Defendants' Motion to Dismiss. [ECF No. 15]. Defendants ask the Court to dismiss the entirety of Ms. Vogt's complaint, arguing that she has failed to state any claims upon which relief may be granted. Specifically, they argue that Ms. Vogt has made insufficient factual allegations to raise a plausible claim for relief for deliberate indifference to serious medical needs, substantive due process, and municipal liability under *Monell*. Defendants also argue that the individual Defendants are entitled to qualified immunity. and that the individual Defendants are entitled to qualified immunity. The Court held a hearing on the motion on July 19, 2021, at which counsel for Defendants and Ms. Vogt were present. [ECF No. 30]. For the following reasons, the Court recommends granting Defendants' motion in part and denying it in part.

1

I.      **Background**

The following factual summary is derived from the Complaint and proceedings contemporaneous with the Motion to Dismiss. The Complaint alleges that Joshua Vogt was arrested following a traffic stop in January 2020. Mr. Vogt was transported to and arrived at the Crow Wing County Jail at 11:51 PM. After a pat-down search, Mr. Vogt entered the restroom, at which point, the Complaint alleges, he ingested two small bags of methamphetamine. Defendant Robert Anderson completed a booking form for Mr. Vogt between 12:12 and 12:19 AM, on which he noted that Mr. Vogt was "exhibiting tremors, sweating profusely," and was "on something right now, but he's unsure what he took." [ECF No. 1 at ¶ 22]. At 12:34 AM, Mr. Vogt lost his balance and fell while having his mugshot taken. At some point, Defendant Raynor Blum informed Defendant Ronald Imgrund that Mr. Vogt "was on drugs and shaking violently." [ECF No. 1 at ¶ 24]. At around 12:46 AM, Mr. Anderson and Mr. Imgrund carried Mr. Vogt into a holding cell, as he was shaking and unable to walk, where he remained until approximately 1:29 AM, when Mr. Imgrund noticed that his tremors were worsening and he was incoherent. At that point, Crow Wing County Jail staff called for an ambulance.

Mr. Vogt stopped breathing at around 1:32 AM. Staff then started life-saving measures, which emergency-medical services took over approximately six minutes later. Mr. Vogt was pronounced dead at 2:20 AM.

2

In April 2021, Molly Vogt—daughter and trustee of Mr. Vogt—filed the instant six-count complaint pursuant to 42 U.S.C. § 1983 against MEnD Correctional Care, PLLC, Crow Wing County, Heath Fosteson, Mr. Anderson, Mr. Blum, Mr. Imgrund, and Correctional Officers Cherokee DeLeon, Christine Ghinter, and Lukasz Organista; claiming deliberate indifference to serious medical needs, denial of due-process right to life, and failure to train. Counts I and II allege deliberate indifference to severe medical needs and denial of due process right to life against the individual defendants in their individual capacities, Counts III and IV allege the same causes of action against Crow Wing County, Count V alleges liability for failure to train against Crow Wing County and Mr. Fosteson, and Count VI alleges liability for failure to train against MEnD. MEnD filed a motion to dismiss in May 2021, and the Crow Wing County Defendants filed a similar motion in June 2021. Prior to the hearing on the motions, the parties stipulated to the dismissal of MEnD, and MEnD was dismissed without prejudice. [ECF Nos. 22, 25].

In their motion, the Crow Wing County Defendants (hereinafter, "Defendants") argue that the remaining five counts should be dismissed because Ms. Vogt has failed to state any claim upon which relief may be granted. They argue that Counts I and II should be dismissed because Ms. Vogt has not made sufficient factual allegations to state plausible claims and because the individual Defendants are entitled to qualified

immunity, and they argue Counts III–V should be dismissed because the Complaint fails to plausibly allege the existence of a policy or custom for municipal liability.

## II.    Analysis

### A.  Standard Governing Motions to Dismiss

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual allegations to state a claim to relief that is plausible on its face." *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014) (quotation omitted). The facts alleged in the complaint must "rise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). When considering such a motion to dismiss, the court takes all factual allegations in the complaint as true and construes all reasonable inferences therefrom in favor of the plaintiff. *Morton v. Becker*, 793 F.3d 185, 187 (8th Cir. 1986). However, the Court does not take as true wholly conclusory allegations or the legal conclusions reached by the plaintiff. *Hanten v. School District of Riverview v. Becker*, 793 F.2d 158, 187 (8th Cir. 1986); *Westcott v. City of Omaha*, 901 F.2d 1486 (8th Cir. 1990).

### B.  Scope of the Record Under Consideration

In support of their Motion to Dismiss, Defendants submitted and asked the Court to take judicial notice of three documents—an incident report completed by Mr. Imgrund, a letter from Donald Ryan to Ms. Vogt's counsel listing enclosed documents following a data request, and a letter from Defendants' counsel to Ms. Vogt's counsel regarding a second data request. [Exs. A–C, ECF No. 18-1]. Ms. Vogt argues that the Court should not take notice of these documents. Alternatively, Ms. Vogt argues that if the Court does take judicial notice, the Defendants' motion must be converted to a motion for summary judgment, which requires that she be permitted to engage in discovery. The Court recommends rejecting the Defendants' attempt to supplement the record.

"When considering a motion for judgment on the pleadings (or a motion to dismiss under Fed. R. Civ. P. 12(b)(6)), the court generally must ignore materials outside of the pleadings . . . ." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). However, the court may consider some materials that are (1) "part of the public record," (2) "do not contradict the complaint," or (3) "necessarily embraced by the pleadings." *Id.* (quotations omitted) (citing *Missouri ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir. 1999) and *Piper Jaffray Cos. v. National Union Fire Ins. Co.*, 967 F. Supp. 1148 1152 (D. Minn. 1997)). Because a motion under Rule 12(b)(6) "will succeed or fail based upon the allegations contained in the face of the complaint," a court's consideration of materials outside of the complaint converts the motion to one

for summary judgment. *BJC Health System v. Columbia Cas. Co.*, 348 F.3d 685, 687–88 (8th Cir. 2003) ("Rule 12(b) is not permissive."). When a 12(b)(6) motion is converted to one for summary judgment, the plaintiff must have had notice and an opportunity to conduct some discovery or present evidence. *See id.* at 688 (holding that the district court's erroneous consideration of materials outside the complaint was not harmless in part because the plaintiff "was never given notice nor an opportunity to discover or to provide additional evidence").

Defendants argue that the Court may consider the documents in question because they are necessarily embraced by the Complaint, because Ms. Vogt must have relied on the documents when drafting it. Specifically, Defendants argue that the Complaint must have been drafted in reliance on Mr. Imgrund's report because it uses similar language and some of the allegations refer to his own actions and perceptions, which would have been unknowable without reference to the report. The letters to Ms. Vogt's counsel are embraced by the Complaint, they argue, because they show what materials Ms. Vogt had access to at the time the Complaint was drafted, and because several documents listed in the letter "would need to be embraced by the Complaint in order to determine the factual allegations, as Plaintiff was not present at the jail and had no firsthand knowledge of the events that took place, needing to refer to and implicitly reference these documents to craft her allegations." [ECF No. 29 at 3–4].

"Documents necessarily embraced by the pleadings include documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012). Defendants have not provided, and the Court has not found, any authority to support the idea that mere possession of materials at the time of drafting the complaint renders them "embraced" for purposes of a 12(b)(6) motion. Indeed, at the hearing, counsel for Defendants conceded that he had no such authority, nor any caselaw in which an incident report or emails to plaintiff's counsel were deemed "embraced" merely because the plaintiff may have used the information gleaned from them to formulate the allegations of the complaint.[1] "The Court will not presume to place itself in the role of [Ms. Vogt's] attorneys by hypothesizing how the information contained in those reports may have been pleaded in the Complaint." *Adams v. Minnesota Dept. of Corrections*, No. 14-cv-977 (MJD/TNL), 2015 WL 774197, at *3 (D. Minn. Sep. 24, 2015).

The "necessarily embraced" standard does not, as Defendants' argument suggests, automatically bring within its sweep all materials that would be probative of

---

[1] Defendants rely heavily on a footnote in a Report and Recommendation for the proposition that "documents and judicial records implicitly referenced in Plaintiff's Complaint" are necessarily embraced by the complaint and proper to consider on a 12(b)(6) motion. *Semler v. Johnston*, No. 20-cv-1062 (WMW/LIB), 2020 WL 9171089, at n.1 (D. Minn. Nov. 9, 2020). The Court disagrees with Defendants' liberal construction of that note and declines to afford it the same level of significance.

any factual allegations in the complaint. Rather, the narrow exception to the general

rule that review of a 12(b)(6) motion is confined to the complaint is reserved for

documents "whose contents are alleged in the complaint." *Ashanti*, 666 F.3d at 1151.

*Shqeirat v. U.S. Airways Group, Inc.*, is illustrative. 515 F. Supp. 2d 984, (D. Minn. 2007).

There, the court found that a police report was necessarily embraced by two counts in

the pleading which alleged that the defendant failed to remove the plaintiff's social

security number from that same police report before publishing it online. *Id.* at 991.

However, the report was not necessarily embraced by the remainder of the complaint,

even though it was the official report of the event that gave rise to many of plaintiff's

other claims. *Id.* at 991, 988–89.

Here, the Complaint does not allege, reference, or incorporate the contents of the

communications to Ms. Vogt's counsel. Similarly, while the allegations in the complaint

might overlap with the contents of Mr. Imgrund's report, it does not make any direct

mention of that report, nor are any of his claims based on the report itself. The

documents are therefore not "necessarily embraced" by the pleadings, and the Court

may not consider them without converting the instant motion to one for summary

judgment. *Compare Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 791–92 (8th Cir. 2014)

(concluding that an agreement was necessarily embraced by the complaint directly

quoted and alleged its contents and was the sole basis for the complaint); *with Adams*,

2015 WL 774197, at *3 (finding that investigative and incident reports were not

embraced by a complaint alleging civil rights claims against prison staff) *and Grover-Tsimi v. Minnesota*, 09-cv-2852 (PJS/AJB), 2010 WL 2732508, at *1, 5 (D. Minn. Jun. 17, 2010) (finding an incident report of the event giving rise to the complaint not embraced by the pleadings).

The Court also declines to convert Defendants' motion to one for summary judgment. The only evidence before the Court are those few documents selectively chosen by the Defendants and several that Ms. Vogt managed to obtain and submit in the event that the Court considered this motion as one for summary judgment. Ms. Vogt is entitled to discovery, and she has asserted that there remains videos and documents of the incident that she is not in possession of. Therefore, the Court will not consider any extraneous documents for purposes of this motion to dismiss.

### C. Claims Against Individual Defendants (Counts I–II)

42 U.S.C. § 1983 grants a private cause of action against a state actor who "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Ms. Vogt claims that the individual Defendants in this action were deliberately indifferent to Mr. Vogt's serious medical needs (Count I) and deprived him

of his right to life (Count II) in violation of the Eighth and Fourteenth Amendments.[2]

The Defendants argue that their Motion to Dismiss should be granted because the

Complaint does not allege sufficient personal involvement of the individual

Defendants, and because those Defendants are entitled to qualified immunity.

**Deliberate Indifference to Serious Medical Needs**

To prevail on a claim for deliberate indifference to serious medical needs, a

plaintiff must show that there was "(1) 'an objectively serious medical need,' and (2)

'that the defendant knew of and disregarded that need.'" *Redmond v. Kosinski*, 999 F.3d

1116, 1120 (8th Cir. 2021) (quoting *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)).

"[D]eliberate indifference requires a highly culpable state of mind approaching actual

intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017). Therefore, for the deliberate-

indifference claim to survive this 12(b)(6) motion, the Complaint must first allege

sufficient facts which, if true, would plausibly support a finding that Mr. Vogt had an

objectively serious medical need. Then, for the claim to survive as to any individual

Defendant, the Complaint must plausibly allege that that Defendant knew of and

disregarded that medical need.

---

[2] Ms. Vogt acknowledges that because Mr. Vogt was a pretrial detainee, his right to
adequate medical care arises under the Fourteenth Amendment. However, to pretrial
detainee cases, the Eighth Circuit applies the same standard as it does to Eighth-
Amendment detainee cases. *Jackson v. Buckman*, 756 F.3d 1060 (8th Cir. 2014).

A medical need is serious if it "has been diagnosed by a physician as requiring treatment, or . . . is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995). The Complaint alleges that at some time around midnight, after being brought into the Crow Wing County Jail, Mr. Vogt ingested two baggies of methamphetamine. [ECF No. 1 at ¶ 20]. As early as 12:12 AM, Mr. Vogt began "shaking, sweating heavily and pacing around the room." [ECF No. 1 at ¶ 23]. Approximately 20 minutes later, he loses his balance while having his mugshot taken, and he is unable to walk on his own about 15 minutes thereafter. [ECF No. 1 at ¶ 23–24]. According to the Complaint, about 45 minutes later, Mr. Vogt was shaking worse than before, was incoherent, and he stopped breathing a few minutes after that. [ECF No. 1 at ¶ 27]. At that time, CPR was started, and Mr. Vogt was pronounced dead at the scene less than an hour later. [ECF No. 1 at ¶ 27–29].

The Court concludes that these facts, taken as true, plausibly allege that Mr. Vogt had an objectively serious medical need. While he had not been diagnosed by a physician, these symptoms and behaviors would suggest to even a layperson that Mr. Vogt was undergoing a medical emergency and in need of immediate attention—especially given how rapidly they set on and worsened. *Barton v. Taber*, 820 F.3d 958, 965 (8th Cir. 2016) (concluding that there was an objectively serious medical need where the deceased fell over, could not walk on his own, could not answer questions and

became unresponsive). Therefore, the Complaint plausibly alleges the first element of the deliberate-indifference claim.

For the second element, the Complaint must plausibly allege that each defendant "actually knew of the risk and deliberately disregarded it." *Vaughn v. Greene Cty.*, 438 F.3d 845, 850 (8th Cir. 2006). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Initially, the Court notes that the Complaint contains no factual allegations as to Defendants Ghinter, Organista, Fosteson, or DeLeon. Aside from the section of the Complaint describing the parties, these Defendants are only named once—in the failure-to-train claim. Ms. Vogt makes more substantive factual allegations as to these defendants in her brief. However, as discussed above, review of a motion to dismiss under Rule 12(b)(6) is limited to whether the *complaint* raises a plausible claim for relief. Ms. Vogt argues in her brief that the factual allegations in the Complaint "apply with equal strength to Defendants DeLeon, Ghinter, and Organista," and cites *Braden* for the proposition that "the Complaint, at this stage of the proceedings, must be read as a whole (not parsed out piece by piece)." [ECF No. 26 at 19 (*citing Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009))]. *Braden*, however, was referring to reading factual allegations "in their totality," not appropriating the plausibility of allegations against one defendant to all others. *Braden*, 588 F.3d at 594 (citing *Vila v. Inter-Am. Inv.*

12

*Corp.*, 570 F.3d 274, 285 (D.C. Cir. 2009) *and Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007)). It is well established that "civil-rights claimants must plead facts showing each defendant's *personal* involvement in alleged constitutional wrongdoing." *Prowell v. PK*, No. 09-cv-2409 (JRT/JJK), 2011 WL 3610410, at *4 (D. Minn. May 24, 2011) (*citing Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999)); *see also Jackson v. Nixon*, 747 F.3d 537 (8th Cir. 2014) (holding that plaintiff's § 1983 complaint was improperly dismissed for failure to allege personal involvement of some defendants, but properly dismissed as to others); *Pittman v. Jesson*, No. 12-cv-1410 (SRN/TNL), 2014 WL 4954286 (D. Minn. Sept. 30, 2014) (granting defendant's motion to dismiss as to some defendants for failure to allege personal involvement, but finding the personal involvement as to other defendants adequately alleged). For these reasons, because the Complaint fails to allege *any* conduct by Defendants Ghinter, Organista, Fosteson, or DeLeon, the Court recommends granting Defendants' Motion to Dismiss Count I as to these Defendants.

As for the remaining Defendants—Mr. Anderson, Mr. Blum, and Mr. Imgrund—the Court concludes that the Complaint plausibly alleges that they were aware of the medical risk to Mr. Vogt and disregarded it. The Complaint alleges that Mr. Anderson initially booked Mr. Vogt upon arrival, and noted "tremors, sweating profusely" on the booking form, as well as "[o]n something right now, but he's unsure what he took. He's sweating heavily." [ECF No. 1 at ¶ 22]. After Mr. Vogt fell, according to the Complaint,

Mr. Anderson helped carry him into a holding cell, where he remained for nearly 45 minutes before an ambulance was called. [ECF No. 1 at ¶¶ 24–26]. The Complaint also alleges that at around 12:46 AM, sometime before Mr. Vogt was carried to a holding cell,[3] Mr. Blum told Mr. Imgrund that Mr. Vogt was "on drugs and was shaking violently." This was approximately 45 minutes before medical personnel were called. [ECF No. 1 at ¶ 27]. These allegations are sufficient to plausibly establish that Mr. Anderson, Mr. Blum, and Mr. Imgrund were aware of Mr. Vogt's serious medical needs and disregarded them. *See Ryan v. Armstrong*, 850 F.3d 419, 426 (8th Cir. 2017) (reversing summary judgment because fact issues remained as to whether defendants were deliberately indifferent when they "allowed him to scream, howl, and bang against his cell door for eight hours without attempting to . . . seek medical intervention"); *Patrick v. Lewis*, 397 F. Supp. 2d 1134, 1142 (8th Cir. 2005) (finding that a reasonable jury could conclude that defendant corrections officer was deliberately indifferent to deceased inmate's medical needs because plaintiff alleged that he observed that inmate was not breathing and delayed medical aid by 20–25 minutes). Defendants might later be able to present evidence which shows that these individuals

---

[3] The Complaint does not specify when Mr. Blum made this report, but the allegation is made immediately before the description of moving Mr. Vogt, and the facts before and after this part of the complaint are consistently chronological. In accordance with the requirement that the allegations be construed in the light most favorable to the plaintiff, the Court treats this allegation as conforming to the surrounding chronology.

either were not actually aware of the serious of the needs or did not deliberately

disregard them; but as of now, the Court's review is limited to the facts alleged in the

Complaint. The deliberate indifference claims as to these individuals ought not be

dismissed.

### Substantive Due Process—Depravation of Right to Life

The Complaint alleges that the Defendants deprived Mr. Vogt of his substantive

due process right to life, in violation of the Fourteenth Amendment.[4] [ECF No. 1 at

¶ 40]. There is no specific test to determine what state conduct is proscribed by

substantive due process rights. *Rochin v. California*, 342 U.S. 165, 173 (1952). Rather, it

"prevents the government from engaging in conduct that shocks the conscience or

interferes with rights implicit in the concept of ordered liberty." *Weiler v. Purkett*, 137

F.3d 1047, 1051 (8th Cir. 1998). A substantive due process claim may be stated in one of

two scenarios: (1) where the state "infringes 'fundamental' liberty interests, without

narrowly tailoring that interference to serve a compelling state interest;" or (2) where

the state "engages in conduct that is so outrageous that it shocks the conscience or

otherwise offends judicial notions of fairness[] or is offensive to human dignity." *Id.*

(quotation omitted). Here, the Complaint alleges the latter—that "Defendants' acts

---

[4] The Complaint also alleges violation of Mr. Vogt's rights under the Eighth
Amendment. [ECF No. 1 at ¶¶ 38–40]. However, the Eighth Amendment contains no
substantive due process right to life. U.S. Const. amend VIII. Ms. Vogt's Eighth
Amendment claims are addressed elsewhere in this Order.

and/or omissions in response to Mr. Vogt's serious medical needs were so egregious and outrageous that Defendants' behavior can be fairly said to shock the conscience." [ECF No. 1 at ¶ 38].

To shock the conscience, the government action complained of must be "truly irrational . . . something more than arbitrary, capricious, or in violation of state law." *Id.* (quotation omitted). The violation must be "so severe . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to brutal and inhumane abuse of official power." *C.N. v. Willmar Pub. Schs., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 634 (8th Cir. 2010) (quotation omitted). Here, the Court concludes that the Complaint does not state a plausible due process claim under the Fourteenth Amendment as to Defendants Anderson, Blum, and Imgrund. Likewise, because the Complaint does not allege any specific conduct on the part of the other Defendants, for the reasons stated above, the Court recommends dismissing Count II as to Defendants Ghinter, Organista, Fosteson, and DeLeon as well.

The Complaint alleges that three of the Defendants were aware of Mr. Vogt's condition and its rapid deterioration for over an hour before summoning medical personnel—waiting approximately 45 minutes after it was known to them that he was "on something," "sweating profusely," "shaking and not able to walk on his own." [ECF No. 1 at ¶¶ 22, 24, 26]. While it is true that Defendants had a special relationship

16

with Mr. Vogt and therefore had "affirmative duties of care and protection," the Defendants' alleged wrongful conduct was passive. *Glasgow v. Nebraska*, 819 F.3d 436, 441–42 (8th Cir. 2016) (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 198–99 (1989)). Even construing the allegations most favorably to Ms. Vogt, the Complaint does not allege that the Defendants forced Mr. Vogt to consume drugs or that they took any direct action to exacerbate his condition. *See Buckley v. Hennepin Cty.*, 9 F.4th 757, 763 (8th Cir. 2021) ("Conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." (quotation omitted)).

Ms. Vogt has not cited, and the Court has not found, any cases in which allegations that government actors failed to recognize and respond to a detainee's overdose were deemed to plausibly allege a violation "so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to brutal and inhumane abuse of official power." *C.N.*, 591 at 634 (8th Cir. 2010). *Compare Haberthur v. City of Raymore*, 119 F.3d 720 (8th Cir. 1997) (reversing dismissal of substantive due process claims where plaintiff alleged that police officer repeatedly followed her home and sexually assaulted and threatened her), *with Hawkins v. Gage Cty.*, 759 F.3d 951, 957 (8th Cir. 2014) (holding that a failure to investigate was not conscience-shocking). Therefore, the Court recommends granting the Motion to Dismiss as to the substantive due process claims.

17

**Qualified Immunity**

Defendants also argue that their Motion to Dismiss should be granted as to the individual defendants because they are entitled to qualified immunity. Qualified immunity protects government actors "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982). At the early motion-to-dismiss stage, the Court considers "whether the plaintiff has stated a plausible claim for violation of a constitutional or statutory right and whether the right was clearly established at the time of the alleged infraction." *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013).

The alleged constitutional infraction here is deliberate indifference to serious medical needs. The Court has already concluded that the Complaint states a plausible claim under this theory, as well as a plausible substantive due process claim for the same conduct. The Eighth Circuit had "deemed it clearly established by 2008 that a pretrial detainee . . . has a right to be free from deliberately indifferent denials of emergency medical care." *Bailey v. Feltmann*, 810 F.3d 589, 593 (8th Cir. 2016); *accord Ryan v. Armstrong*, 850 F.3d 419, 427 (8th Cir. 2017) (reversing grant of qualified immunity to correctional officers in a deliberate-indifference case); *Patrick v. Lewis*, 397 F. Supp. 2d 1134, 1142 (D. Minn. 2005) ("[T]he right of a detainee to medical care when it is known that failing to provide care would put the detainee at risk of serious harm is

a clearly established right."). Accordingly, the Court concludes that Defendants Anderson, Blum, and Imgrund are not entitled to qualified immunity at this stage of the litigation.

### D. *Monell* Claims (Counts III–V)

In Counts III–V, the Complaint alleges that Crow Wing County shares liability for the two counts above (denial of adequate medical care and due process violations), as well as for failing to train the jail staff, because the constitutional violations were pursuant to de facto policies and procedures (the *Monell* Claims) [ECF No. 1 at ¶¶ 44, 50, 55].

Liability under § 1983 attaches to a municipality only if the underlying constitutional violation was the result of an official policy, an unofficial custom, or a deliberately indifferent failure to train or supervise its employees. *Bolderson v. City of Wentzville*, 840 F.3d 982, 985 (8th Cir. 2016); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). To succeed on a *Monell* claim based on unofficial custom, a plaintiff must show:

> (1) The existence of a continuing, widespread persistent pattern of unconstitutional misconduct by the governmental entity's employees;

> (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

> (3) The plaintiff's injury by acts pursuant to the governmental entity's custom, *i.e.*, proof that the custom was the moving force behind the constitutional violation.

19

*Ware v. Jackson Cty*, 150 F.3d 873, 880 (8th Cir. 1998). To recover on a *Monell* claim based on a failure-to-train theory, a plaintiff must show (1) that the municipality's training practices were inadequate; (2) that the municipality was "deliberately indifferent to the rights of others in adopting them, such that the failure to train reflects a deliberate or conscious choice;" and (3) the deficient training practices "actually caused the plaintiff's injury." *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996)

Defendants argue that Ms. Vogt's *Monell* claims should be dismissed because she does not allege any facts that would support finding an unofficial custom or failure to train, but rather makes "threadbare recitals of the elements" and conclusory statements based on a single incident. Ms. Vogt responds that she has made sufficient allegations to survive a motion to dismiss because to make more substantive allegations, she needs to obtain more information that Defendants possess through the discovery process. At the hearing, Ms. Vogt argued that granting a motion to dismiss at this stage would effectively insulate municipalities from *Monell* liability where only the defendant is in possession of the information necessary to support more factual allegations.[5]

It has been recognized that, "[w]hen a complaint is filed, a plaintiff may not be privy to the facts necessary to accurately describe or identify any policies or customs

---

[5] Ms. Vogt also argues that information she has received since filing the Complaint supports a *Monell* claim. Again, however, the Court must only consider the allegations in the Complaint.

which may have caused the deprivation of a constitutional right." *Doe ex rel. Doe v. Sch. Dist.*, 340 F.3d 605, 614 (8th Cir. 2003). Nevertheless, to survive a motion to dismiss, the complaint must, "[a]t a minimum, . . . allege facts which would support the existence of an unconstitutional policy or custom." *Id.* If a complaint does not include "any allegations, reference, or language by which one could begin to draw an inference that the conduct complained of . . . resulted from an unconstitutional policy or custom," a motion to dismiss will be granted as to any *Monell* claims. *Crumpley-Patterson v. Trinity Lutheran Hospital*, 388 F.3d 588, 591 (8th Cir. 2004). And while "an unconstitutional custom claim cannot be predicated on a single act, . . . the Eighth Circuit has not determined whether some other, minimum number of incidents is required as evidence of custom." *Tirado v. City of Minneapolis*, 521 F. Supp. 3d 833, 841 (D. Minn. 2021).

Here, Ms. Vogt points to three factors which she argues meet the pleading requirement for municipal-liability claims. First, she argues that she "is aware of two other Crow Wing County Inmate deaths in the last ten years." [ECF No. 26 at 24]. However, this allegation was not in the Complaint, and therefore cannot be a basis for denying the motion to dismiss. *See Doe ex rel. Doe*, 340 F.3d at 614 ("The fact that the Does, through subsequent discovery, uncovered the existence of a formal written policy . . . is not relevant to our determination regarding the adequacy of the pleadings."). Second, she argues that the allegation that "Crow Wing County has had an on-going and systematic failure to properly provide adequate medical care and attention to

inmates suffering from drug overdose such that it was a *defacto* [sic] policy and procedure" is sufficient to withstand a motion to dismiss. [ECF No. 1 at ¶ 50]. However, this is merely a conclusory statement which is entitled to no deference and does not give rise to "an inference that the conduct complained of . . . resulted from an unconstitutional policy or custom." *Crumpley-Patterson*, 388 F.3d at 591.

Finally, Ms. Vogt argues that the fact that deliberate indifference was not exhibited by a single correctional officer, but all of those who came into contact with Mr. Vogt, supports the existence of a policy or custom. However, while "multiple incidents involving a single plaintiff could establish a 'custom,'" the incidences must have "occurred over a course of time sufficiently long to permit notice of, and then deliberate indifference to or tacit authorization of, the conduct by the policymaking officials." *Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 829 (8th Cir. 2013). While there is no bright-line test to determine how much time is "sufficient," it is clear that the less-than two hours involved here are insufficient. *Id.* (affirming summary judgment for the county because the plaintiff presented no evidence that a "few hours" was sufficient for policymakers to receive notice of and disregard the conduct).

For the foregoing reasons, the Court concludes that Ms. Vogt has not alleged sufficient facts in the Complaint "which would support the existence of an unconstitutional policy or custom." *Doe ex rel. Doe*, 340 F.3d at 614. Accordingly, the

Court recommends granting the Motion to Dismiss as to the counts against Crow Wing County.[6]

### E. Failure to Train as to Defendant Fostesen

Ms. Vogt also brings her failure-to-train claim in Count V against Defendant Fostesen in his individual capacity. However, this claim suffers from the same deficiencies as the *Monell* claims.

"A supervisor may be held individually liable . . . if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights." *Vaughn v. Greene County*, 438 F.3d 845, 851 (8th Cir. 2006). Ms. Vogt must show that Mr. Fostesen "was deliberately indifferent to or tacitly authorized the offending acts," which requires showing that Mr. Fostesen "had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996).

Ms. Vogt offers little argument in favor of her claim against Mr. Fostesen in his individual capacity, and instead mentions the standard for supervisory liability amidst her argument for municipality liability against Crow Wing County. [ECF No. 26 at 26]. Like her claims against Crow Wing County, the Complaint simply does not make any factual allegations from which an inference may be drawn that Mr. Fostesen had notice

---

[6] The Court notes that Ms. Vogt would not be precluded from seeking leave to amend her Complaint to add *Monell* claims should the discovery process reveal more information to support them.

of the inadequacy of any training procedures. Accordingly, the Court concludes that the failure-to-train claim against Mr. Fostesen is insufficiently plead to withstand a motion to dismiss.

### III.     Recommendation

Based on the foregoing, the Court **RECOMMENDS** that the Motion to Dismiss [ECF No. 15] be **GRANTED** as to Counts II–V in their entirety; **GRANTED** as to all counts against Defendants Heath Fosteson, Cherokee DeLeon, Christine Ghinter, and Lukasz Organista; and **DENIED** as to Count I against Defendants Robert Anderson, Raynor Blum, and Ronald Imgrund.


Date: November 1, 2021                              *s/ Katherine Menendez*
                                                   Katherine Menendez
                                                   United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.